[No. B226675. Second Dist., Div. Three. Dec. 19, 2013.]

FLORA DOLNIKOV, Plaintiff, Cross-defendant and Respondent, v. DIKRAN EKIZIAN et al., Defendants, Cross-complainants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are enclosed within double brackets, [[/]].

COUNSEL

Law Offices of Herbert Hafif, Herbert Hafif, Greg K. Hafif; and Mark C. Calahan for Defendants, Cross-complainants and Appellants.

Timothy D. McGonigle Professional Corporation and Timothy D. McGonigle for Plaintiff, Cross-defendant and Respondent.

Melvin Teitelbaum for Westmac Investment Ventures, LLC and Erina Gilerman as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent.

OPINION

ALDRICH, J.—

## INTRODUCTION

We hold in this appeal that conduct can constitute actionable interference with the use and enjoyment of an easement even when the conduct does not physically obstruct the servitude. The easement in question is for ingress and egress to undeveloped lots in the Hollywood Hills. Plaintiff Flora Dolnikov, owner of the dominant tenement, was interrupted during her construction of two residences by defendants Dikran Ekizian and Diramesi Investments, LLC (defendants or Ekizian), the servient tenement owners who refused to sign both a covenant for community driveway and permission for a building permit to construct a retaining wall. The City of Los Angeles Department of Building and Safety (LADBS) required defendants' signatures before it would issue plaintiff the permits necessary to make the easement roadway useable for its intended purpose. Plaintiff sued defendants seeking declaratory relief and damages. Defendants appeal from the ensuing judgment entered in favor of plaintiff. In the published portion of this opinion, we hold that the evidence supports the jury's finding that defendants unreasonably interfered with plaintiff's use and enjoyment of the easement. In the unpublished portion of this opinion, we reject defendants' remaining challenges. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The easement*

In 1998, plaintiff acquired undeveloped lots 29 and 30 in tract 4202 located above Laurel Canyon. Her neighbor to the north and east, Amnon Gad,

through his company, Amgad, Inc., owned lot A, off of Floral Avenue, which consisted of four undeveloped acres in tract 4150.

In 1942, defendants' predecessor in interest granted and recorded the easement at issue to plaintiff's predecessor in interest (the easement). The easement provides in relevant part:

"EASEMENT—GENERAL

"A strip of land 14 Ft. wide, 7.00 Ft on each side of the following described center line [beginning, curves, and ending described]. The foregoing described Right of Way is now improved and is used by the Bureau of Water Works and Supply of the City of Los Angeles, California [now the Los Angeles Department of Water and Power] . . . . NOW, THEREFORE, it is hereby agreed as follows: *The said [defendants' predecessor] does hereby grant, assign and set over to the said [plaintiff's predecessor] . . . A right of way for ingress and egress over the above described property for street purpose for the benefit of Lots 29 and 30 of Tract 4202 . . . .* TO HAVE AND TO HOLD the said easement, right and right-of-way unto [plaintiff's predecessor], his successors or assigns for a period of perpetuity. . . ." (Italics added.)

The easement begins at the top of Floral Avenue at the south end of lot A. It runs on the lot A side of the property line with plaintiff's properties, uphill and roughly north in a wide curve, concave to the east, around a hill on lot A and ending at a point in lot A that is even with the northern boundary of plaintiff's properties to the west. (A copy of a schematic is attached as an appendix to this opinion.)

In 2001, plaintiff obtained permits from LADBS to construct two houses on her land, to be designated 8027 and 8031 Floral Avenue. Her permit application included an unrecorded covenant and agreement for a community driveway executed in 1999 by defendants' predecessor, Mr. Gad. LADBS issued the permits with the understanding the driveway would be 14 feet wide, the width of the easement, notwithstanding the zoning code required a 20-foot width.

In June 2002, while plaintiff's construction was in progress, Amgad, Inc., sold lot A to defendant Diramesi Investments, LLC, a company owned by defendant Ekizian. Defendants purchased lot A for investment purposes with full knowledge of the easement and plaintiff's development.

2. *The cut and the retaining wall permit*

Plaintiff's architect designed both residences so that their front doors and garages faced roughly east toward the easement. The slope of the easement

was too steep and the right-of-way had fallen into disrepair so that all that remained of the original pavement was substantially covered with dirt and rocks from uphill. As such, the easement was unsuitable for ingress and egress to plaintiff's property. One of the first steps plaintiff took was to improve the easement roadway so that it could be used for access to plaintiff's houses. LADBS approved a grading plan to lower the ground in the upper end of the easement to allow greater and more level access into the garage for 8031 Floral Avenue, on old lot 29. The grading would lower the soil level about six to eight feet below the level of what is the continuation of the old Los Angeles Department of Water and Power (LADWP) right-of-way at the end of the easement leading north into defendants' property. The cut would create a roughly vertical face adjacent to the property line that needed shoring to stabilize the steep slope on defendants' property and to comply with the building code. To stabilize the slope, the grading plan called for a retaining wall to be constructed across the face of the cut along the lot A (or defendants') side of the easement and perpendicular across the end of the easement where the LADWP right-of-way continues into lot A.

After making the cut into the soil on the easement according to the approved grading plans, plaintiff discovered there was no permit to construct the retaining wall in the LADBS files. When she went to apply for the missing permit, she learned that Ekizian had complained and questioned plaintiff's right to build on his property.

### 3. *LADBS stops work on plaintiff's project and revokes her permit.*

LADBS notified plaintiff in June 2004 of its intent to revoke her building permits. LADBS explained that, among other things, the community driveway covenant from Gad was invalid because it was unrecorded, and LADBS required a new covenant signed by Ekizian as current owner of the property.

Plaintiff had numerous conversations with defendants, during which it became clear that Ekizian opposed her right to build. Ekizian did not recognize the unrecorded community driveway covenant from Gad; did not acknowledge plaintiff's easement rights; insisted the driveway had to be 20 feet wide per then current code requirements, not the 14-foot width of the easement; and complained that he was damaged by her grading cut into the side of the easement. Ekizian demanded $100,000, then $200,000 from plaintiff. He stated variously that the money represented damages, or was a prerequisite to talks. He also demanded plaintiff cut into his hill, build a 20-foot-wide road, buy a $1 million insurance policy naming him beneficiary, and erect a retaining wall to his specifications for width, depth, and paint, before he would sign the community driveway covenant. Plaintiff felt Ekizian was "just trying to extort money," and she could not comply with what she thought were Ekizian's "outrageous" demands.

In the absence of defendants' signatures, LADBS issued a stop-work order in June 2004 and revoked plaintiff's permits in late July 2004, bringing to a halt work on the driveway that provided access to the houses. At the time, plaintiff's houses were in the framing stage, with exposed wood and no roof and so they posed a fire hazard. LADBS would only reinstate the original permits if plaintiff recorded a community driveway covenant signed by Ekizian. Ekizian refused to sign.

Plaintiff filed applications with LADBS for a garage in a different place on lot 30 and a new garage for lot 29 with access from Seaview Trail to the west instead of the easement. In 2005, LADBS issued permits with the condition that the certificate of occupancy for the dwelling would not be issued until the detached garage accessible from Seaview Trail was completed or until a properly executed community driveway covenant, approved by LADBS, was recorded. Ekizian still refused to sign a new community driveway covenant.

### 4. *The instant lawsuit*

Meanwhile, in September 2004, plaintiff filed her complaint against defendants seeking damages for interference with her easement, injunctive relief, and a declaration of the parties' rights and duties under the easement. Defendants cross-complained seeking damages for, among other things, trespass, negligence, and nuisance by failing to maintain the easement and by improperly excavating a seven-foot cut on defendants' property without defendants' consent. The matter was bifurcated.

### 5. *The declaratory judgment after bench trial*

After a bench trial on the declaratory relief question, the trial court found, based on the wording of the 1942 deed, that the easement provided for a 14-foot-wide right-of-way for ingress and egress from lots 29 and 30 onto Floral Avenue that did not exclude use by the servient tenement owners that was consistent with plaintiff's normal use of the easement. As for the grading and retaining walls as shown on plaintiff's approved grading plan, the court found they were *necessary for the use of the easement for its expressly intended purpose by plaintiff, the owner of the dominant tenement, and that their presence was not in any sense inconsistent with the nature of the easement and were authorized by the easement.* The court reasoned that the retaining wall along the roadway parallel to the easement's length was necessary to prevent earth from re-covering the road surface and interfering with the dominant tenement's use of the easement as a driveway. Thus, the retaining wall was the type of permanent structure that was a " 'necessary incident' " of the easement.

The grading cut and the retaining wall at the end of the easement were also necessary to enable plaintiff's use of the full extent of the easement as a

right-of-way for ingress and egress, the trial court found. However, that retaining wall at the end of the easement also constituted a barrier to defendants' access from the easement to his lot along the continuation of the LADWP right-of-way. The court found that the solution to this obstruction was found on defendants' property, in that the retaining wall across the end of the easement would become unnecessary if the grade up what is the extension of the LADWP right-of-way into lot A were ever modified to permit vehicular access.

### 6. *Plaintiff's persisting permit troubles*

In 2009, LADBS issued a retaining wall permit for 8030 Floral Avenue and plaintiff was able to resume construction. However, LADBS revoked that permit because defendants refused to give permission for it, even after the trial court declared the wall to be a necessary part of the easement. As of trial, plaintiff had no retaining wall permit and so LADBS would not conduct a final inspection of her property to issue her occupancy certificates.

### 7. *The jury trial and verdicts*

At trial, plaintiff adduced evidence that defendants committed the following four specific acts that she believed constituted interference with her use and enjoyment of the easement: Ekizian's (1) refusal to sign the covenant for community driveway; (2) refusal to sign a retaining wall permit which was a prerequisite to plaintiff's occupancy certificate; (3) demands for money in exchange for granting plaintiff rights she already possessed in the easement; and (4) statements that plaintiff lost her easement by creating the grading cut and burdening the easement.

Defendants moved for nonsuit and then directed verdict on the grounds that these four acts or refusals to act did not interfere with plaintiff's easement. Plaintiff countered that the easement created a covenant running with the land, which is a contract into which a covenant of good faith and fair dealing could be implied. Defendants argued that as a matter of law, a covenant of good faith and fair dealing cannot be implied into an easement created by grant deed. The trial court agreed with plaintiff that the deed was also a covenant running with the land and allowed her to so amend her complaint.

The jury answered special questions finding that defendants substantially and unreasonably interfered with plaintiff's use and enjoyment of her easement by acting or failing to act, and next that defendants breached the implied covenant of good faith and fair dealing contained in the easement's running covenant. On defendants' complaint, the jury also found that plaintiff breached the implied covenant of good faith and fair dealing.

The trial court entered its judgment awarding plaintiff $713,927.96 in damages and interest, but ordering her to remove that portion of the retaining wall across the end of the easement at her expense if the grade up what was the extension of the LADWP right-of-way onto lot A is modified pursuant to permits from LADBS. The court permanently enjoined defendants from interfering with plaintiff's easement, including interfering with the construction, maintenance, and repair of the retaining wall. Recognizing that LADBS required the servient tenement owner to sign permission for the retaining wall before it would inspect and issue certificates of occupancy, the court ordered defendants to sign the necessary forms, if and when requested. The court retained equitable jurisdiction in recognition that plaintiff continued to suffer damages every day that her use of the easement was infringed. Defendants' timely appeal ensued. Additional facts will be presented with the relevant issue in the discussion section.[1]

[[CONTENTIONS]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

[[/]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Defendants' key assignment of error is the trial court's determination that the 1942 deed was both an easement and a covenant running with the land into which the court implied a further covenant of good faith and fair dealing. On this court's own motion after oral argument, we requested supplemental briefing on the question whether defendants interfered with plaintiff's easement, irrespective of any obligations that might be impliedly contained in a covenant running with the land. Specifically, we asked whether there was legal authority for the proposition that any of the following acts, individually or in combination, constituted interference with plaintiff's use and enjoyment of the easement: Ekizian's (1) refusal to sign a covenant for community driveway; (2) refusal to sign a retaining wall permit; (3) demand for money in exchange for granting plaintiff rights she already possessed in the easement; and (4) statements that plaintiff lost her easement by creating the

---

[1] During pendency of this case, plaintiff filed for bankruptcy protection and the property was sold. We allowed the new owners, Westmac Investment Ventures, LLC, and Erina Gilerman, to file a brief as amicus curiae.

* See footnote, *ante*, page 419.

grading cut and burdening the easement. We were concerned about whether an intangible act that did not physically invade the easement, such as a statement or a refusal to sign documents, could constitute an interference with the easement.

Defendants responded in supplemental briefing that the easement did not require them to sign either document and there is no legal authority for the contention that defendants' refusal to cooperate constituted an interference with plaintiff's use and enjoyment of the easement. Defendants argue that plaintiff may enter over their property to gain access to Floral Avenue, but "[n]othing more." We disagree.

■ The grant of an easement must "be interpreted liberally in favor of the grantee." (*Norris v. State of California ex rel. Dept. Pub. Wks.* (1968) 261 Cal.App.2d 41, 46–47 [67 Cal.Rptr. 595], citing Civ. Code, § 1069.) When an easement is based on a grant, as it is here, the grant gives the easement holder both "those interests expressed in the grant and those necessarily incident thereto." (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579 [110 P.2d 983].) "Every easement includes what are termed 'secondary easements;' that is, the right to do such things as are necessary for the full enjoyment of the easement itself." (*North Fork Water Co. v. Edwards* (1898) 121 Cal. 662, 665–666 [54 P. 69].)

A secondary easement can be the right to make "repairs, renewals and replacements on the property that is servient to the easement" (*Donnell v. Bisso Brothers* (1970) 10 Cal.App.3d 38, 43 [88 Cal.Rptr. 645]) "and to do such things as are necessary to the exercise of the right" (*Smith v. Rock Creek Water Corp.* (1949) 93 Cal.App.2d 49, 53 [208 P.2d 705]). Thus, where the easement was for flood control purposes, one court held, it carried a secondary easement for repair of the channel including the right "to take earth, rock, sand and gravel for the purpose of excavating, widening and deepening or otherwise rectifying the channel and the maintenance and repair of embankments and other protection work." (*Haley v. L. A. County Flood Control Dist.* (1959) 172 Cal.App.2d 285, 290 [342 P.2d 476].) A right-of-way to pass over the land of another carries with it "the implied right . . . to make such changes in the surface of the land as are necessary to make it available for travel in a convenient manner." (*Ballard v. Titus* (1910) 157 Cal. 673, 681 [110 P. 118].)

■ Incidental or secondary easement rights are limited by a rule of reason. "The rights and duties between the owner of an easement and the owner of the servient tenement . . . are correlative. Each is required to respect the rights of the other. Neither party can conduct activities or place obstructions on the property that unreasonably interfere with the other party's use of

the property. In this respect, there are no absolute rules of conduct. The responsibility of each party to the other and the 'reasonableness' of use of the property depends on the nature of the easement, its method of creation, and the facts and circumstances surrounding the transaction." (6 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 15:63, p. 15-215 (rel. 8/2006).)

■ As applied to dominant owners, the rule of reason allows them to exercise secondary easement rights "so long as the owner thereof uses reasonable care and does not increase the burden on or go beyond the boundaries of the servient tenement, or make any material changes therein." (*Ward v. City of Monrovia* (1940) 16 Cal.2d 815, 821–822 [108 P.2d 425]; see *North Fork Water Co. v. Edwards, supra,* 121 Cal. at p. 666; *Haley v. L. A. County Flood Control Dist., supra,* 172 Cal.App.2d at p. 290.) A secondary easement may be exercised "only when necessary and in such reasonable manner as not to increase the burden needlessly on the servient estate or to enlarge it by alteration in the mode of operation." (*Smith v. Rock Creek Water Corp., supra,* 93 Cal.App.2d at p. 53.) The easement owner does not have the right to "so change the surface of the land as seriously to damage the usefulness of the servient estate . . . [¶] 'It is well settled that the owner of an easement cannot change its character, or materially increase the burden upon the servient estate, or injuriously affect the rights of other persons, but within the limits named he may make repairs, improvements, or changes that do not affect its substance.' " (*White v. Walsh* (1951) 105 Cal.App.2d 828, 832 [234 P.2d 276], citing *Burris v. People's Ditch Co.* (1894) 104 Cal. 248, 252 [37 P. 922].) In *Herzog v. Grosso* (1953) 41 Cal.2d 219 [259 P.2d 429], the Supreme Court held that the trial court properly recognized a right in the easement holder to construct and maintain a wooden guardrail along the northerly boundary of the roadway because, "[b]y the grant of the easement . . . [the easement holder] acquired the right to do such things as are reasonably necessary to their use thereof. [Citations.]" (*Id.* at p. 225.) Where the road adjoined a steep embankment, guardrails were "reasonably necessary and would not unduly burden the servient tenement." (*Ibid.*)

■ Likewise, the servient owner "who holds the land burdened by a servitude" (Rest.3d, Property, Servitudes, § 4.9, com. c, p. 582) is held to the same reasonableness standard. The servient owner is "entitled to make all uses of the land that are not prohibited by the servitude and that do not interfere unreasonably with the uses authorized by the easement . . . ." (*Ibid.*) "[T]he servient owner may use his property in any manner not inconsistent with the easement so long as it does not *unreasonably impede* the dominant tenant in his rights." (*City of Los Angeles v. Howard* (1966) 244 Cal.App.2d 538, 543 [53 Cal.Rptr. 274], italics added.) *"Actions that make it more difficult to use an easement, that interfere with the ability to maintain and repair improvements built for its enjoyment, or that increase the risks attendant on exercise of rights created by the easement are prohibited . . .*

*unless justified by needs of the servient estate.* In determining whether the holder of the servient estate has unreasonably interfered with exercise of an easement, the interests of the parties must be balanced to strike a *reasonable accommodation* that maximizes overall utility to the extent consistent with effectuating the purpose of the easement . . . and subject to any different conclusion based on the intent or expectations of the parties . . . ." (Rest.3d Property, Servitudes, § 4.9, com. c, p. 583, italics added.)

■ Given that reasonableness depends on the facts and circumstances of each case, "[w]hether a particular use of the land by the servient owner . . . is an unreasonable interference is a question of fact for the jury. [Citations.]" (*Pasadena v. California-Michigan etc. Co., supra*, 17 Cal.2d at pp. 579–580; see *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 354 [48 Cal.Rptr.3d 875].)

Here, in the declaratory relief portion of the trial, the court found "the grading and retaining walls are necessary for the use of the easement for its expressly intended purpose by Lots 29 and 30, and that their presence is not in any sense inconsistent with the nature of the easement."

■ As the grading and retaining wall are necessary incidents of, and not inconsistent with, the easement for ingress and egress, they are secondary easements, and so plaintiff was entitled to make the cut and build the wall in furtherance of her rights and her full enjoyment of the easement. Plaintiff acted reasonably in grading and seeking to install the retaining wall to prevent defendants' land from eroding onto the roadway. She followed the city's requirements to merely excavate and make changes in the surface of the land necessary to make the easement passable. The record showed plaintiff neither went beyond the bounds of the easement, nor increased the burden needlessly, nor injured defendants' rights. Indeed, rather than damage the usefulness of, or unduly burden, the servient estate, the evidence showed that by grading, plaintiff made the easement useable "for street purpose," and the retaining wall would prevent injurious impact on defendants' property. Therefore, plaintiff benefitted defendants in the event they seek to develop their property.[2]

In contrast, Ekizian's refusals to sign constituted an unreasonable interference with plaintiff's use and enjoyment of the easement. As servient owners,

---

[2] The trial court also found that the grading cut at the end of the easement "constitutes a new barrier to access to [defendants' property on lot A] . . . which did not previously exist" and that the city required a retaining wall across the cut there. However, the court ordered plaintiff to remove that portion of retaining wall at her own expense *if* the grade up what was the extension of the LADWP right-of-way into defendants' property is modified with LADBS-issued building permits. Stated differently, the court found that given the topography, there was a need for a temporary barrier, which wall will be removed *at plaintiff's expense* when access is appropriately required by defendants.

defendants are also subject to the rule of reasonableness and mutual accommodation. The evidence showed that LADBS required defendants' signature on the covenant for community driveway and their permission for the retaining wall permit. But defendants refused to sign and so LADBS revoked plaintiff's building permits forcing plaintiff's construction to come to a halt. Defendants were continuing to prevent plaintiff from obtaining occupancy certificates even at the time the court entered judgment. Notwithstanding the grading and retaining wall were necessary to make the easement useable as a right-of-way for ingress and egress "for street purpose," Ekizian's refusal to sign these documents impeded plaintiff's rights and rendered plaintiff's easement utterly useless for the purpose for which it was intended. Fully aware before they purchased lot A that plaintiff was in the process of constructing two residences on her property that relied on the easement, defendants nonetheless refused to accommodate plaintiff. There is no evidence the signatures imposed a needless burden on defendants; the refusal to sign was in no way justified by the needs of the servient estate, particularly because defendants had no development plans at the time, and because the grading and retaining walls made the easement passable and thus benefitted defendants' property. By declining simply to provide a signature on two documents required by the city, defendants interfered with plaintiff's ability to maintain and repair the easement, and rendered plaintiff's use of the easement, not simply more difficult, but impossible. In this manner, defendants' action of refusing to cooperate or reasonably accommodate constituted a complete and total obstruction of plaintiff's easement. The evidence supports the jury's finding defendants unreasonably interfered with plaintiff's use and enjoyment of her easement. (*Pasadena v. California-Michigan etc. Co., supra,* 17 Cal.2d at p. 579; see *Red Mountain, LLC v. Fallbrook Public Utility Dist., supra,* 143 Cal.App.4th at p. 354.)[3]

 [[B.–D.]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

 [[IX.]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

 [3] As the result of our holding that defendant' refusal to sign the two documents required by the city constituted and interference with plaintiff's easement rights, we need not decide whether a statement such as the two at issue here might constitute an interference with the easement.

 *See footnote, *ante,* page 419.

## DISPOSITION

The judgment is affirmed. Plaintiff is to recover costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

## APPENDIX